# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARVIN L. DYSON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 2:09-cv-3846 |
| | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

**Memorandum**

YOHN, J.                                                                                                          June 30, 2010

Plaintiff, Marvin L. Dyson, seeks reversal or remand of a decision by the Commissioner of the Social Security Administration denying Dyson's application for Supplemental Security Income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred this case to United States Magistrate Judge David R. Strawbridge for a Report and Recommendation. The Magistrate Judge recommended that the court reverse the decision and remand the case for further consideration. The Commissioner objects, arguing that the findings of the Administrative Law Judge ("ALJ") are properly supported by substantial evidence, including the finding that Dyson is capable of a full range of medium work such as his previous work as a cleaner/janitor. After conducting a *de novo* review of the Report and Recommendation, the court will overrule the objections, adopt the report, and approve the recommendation. It is impossible to determine from the ALJ's findings whether she properly considered the medical opinion of Dyson's treating physician when she decided to give the opinion "little weight," and therefore it is impossible to determine whether the decision is supported by substantial evidence. Accordingly, the court will reverse the decision and remand the case for further consideration.

I.      **Factual and Procedural Background**

Dyson protectively filed his application for SSI benefits on May 17, 2007, alleging that he was disabled beginning on that date. (R. 109, 115.) He was fifty-five years old at the time. (R. 23.) In the past, he had worked as a custodian and for a cleaning company in "general maintenance." (R. 25, 116, 129.) He asserted that he was disabled due to a back impairment, hepatitis C, high blood pressure, anxiety, and drug abuse. (R. 115.)

In January 2003, Dyson began a course of treatment with Dr. Scott Sulman at Delaware Valley Medical Specialists for hepatitis C, lower back pain, and anxiety. (R. 199, 201-02, 433.) This continued until January 2005, when he began seeing Dr. Cheryl Branon, a specialist in internal medicine at the same practice. (R. 197, 205.) Although Dr. Branon saw Dyson as many as eleven times between January 20, 2005, and July 3, 2007, and prescribed Percocet to him on approximately fifteen occasions, the record only reflects that Dyson complained of back pain on May 17, 2006, and on July 3, 2007, his last recorded visit. (R. 119, 205-215.)

On that last visit, Dr. Branon completed a form "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (R. 194-197.)[1] In this medical source statement, Dr. Branon stated that Dyson could lift only twenty-five pounds occasionally and ten pounds frequently. (R. 194.) She also stated that he could "stand/walk" for only two hours in an eight-

---

[1] A medical source statement is a medical opinion "about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Social Security Ruling ("S.S.R.") 96-5p. Although the RFC determination is reserved for the Commissioner, medical source statements from treating sources are entitled to "controlling weight" to the extent they include medical opinions that are "well-supported by medically acceptable clinical and laboratory techniques and [are] not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). Even if the medical opinion is not controlling, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 416.927. S.S.R. 96-2p.

hour workday, was unable to crawl or stoop, and should avoid temperature extremes, vibration, and work-related hazards. (R. 194-97.) She stated that the "medical/clinical findings" that supported her conclusions included that "crawling and stooping causes severe pain in low back" and "vibration exacerbates back pain." (R. 195, 197.)

On July 25, 2007, while his SSI claim was being considered initially, Dyson was involved in a car accident and was taken to the emergency room of Mercy Hospital of Philadelphia. (R. 270.) Although he left the hospital against medical advice the night of the accident, he returned for further testing when he was called by hospital personnel the following day, July 26, 2007. (R. 269.)[2] On that day, he underwent an MRI and CT scan of his cervical spine. The MRI revealed that Dyson had "[m]ultilevel cervical spondylosis with areas of central and neural foraminal stenosis as detailed in the body of [the] report[,]" although there was "no evidence of abnormal signal within the spinal cord." (R. 249.) The MRI further revealed that Dyson had "left paracentral disc herniation osteophyte complex" at the C3-C4 level, "posterior disc bulge osteophyte complex" at C4-C5 and C5-C6, and "disc bulge osteophyte complex" at C6-C7. (Id.) The CT scan of his cervical spine noted "[e]xtensive degenerative changes throughout the cervical spine . . . and most prominent from the C4-C5 to the C6-C7 levels with spinal canal narrowing with effacement of ventral CSF space and bilateral neural foraminal narrowing." (R. 263.) The CT scan also noted degenerative disc disease from the C2-C3 through C6-C7 levels.

---

[2] At his administrative hearing, Dyson explained that he left the hospital to "let [his] granddaughter into the house," and that he left his phone number "and told them if there was any problems with [his tests], to call him." (R. 30; see also R. 246 (hospital notes from night of accident state that "Pt states he cannot wait for results of MRI and needs to go home to take care of granddaughter.")

(Id.)³ After undergoing these tests, Dyson again left the hospital against medical advice. (R. 242.) According to the record, he did not seek further medical treatment until April 28, 2008. (R. 357.)⁴

Dyson's SSI claim was denied on November 9, 2007. (R. 10.) On November 9, 2007, he filed a timely request for a hearing. (R. 71.)

On April 28, 2008, he began treatment with an orthopedist named Dr. Wren. (R. 10, 357.)⁵ Dr. Wren prescribed Dyson with Endocet, a pain medication, on approximately eleven occasions between April 28, 2008, and April 28, 2009. (R. 36, 357-63.)

Dyson's hearing was held on November 18, 2008. (R. 20.) At the hearing, Dyson testified that his back impairment limited his ability to walk, although he was able to walk "like two blocks or a block and a half" to catch the bus. (R. 42.)⁶ He also asserted that he could only lift "around 15 to 20 pound[s]" and had difficulty sitting for long periods of time. (R. 43.) He testified that he did not prepare his own meals, but that he did go to a methadone maintenance program every day and to church twice a week with his girlfriend. (R. 33-34, 43, 52-53.)

The ALJ issued an unfavorable ruling on March 23, 2009, in which she found that Dyson is capable of "performing past relevant work as a cleaner/janitor." (R. 16.) The ALJ's decision

---

³ CT scans of his facial bones and head were also taken but were unremarkable. (R. 276-77.)

⁴ Dyson did attend daily treatment at a methadone maintenance and counseling program. (R. 169-93, 356.) He began abusing heroin when he was fifteen years old (R. 178) but claims that he is committed to his methadone treatment and that he is no longer using street drugs. (R. 29, 33-35.) He also testified at his administrative hearing that the methadone treatment helped alleviate his back pain. (R. 29.)

⁵ The record does not reflect Dr. Wren's full name or specialty. (R. 34-36.) The ALJ, however, refers to Dr. Wren as an orthopedist. (R. 10.)

⁶ The only other witness at the hearing was a vocational expert. (R. 10.)

centered on whether Dyson had been disabled since May 17, 2007, the date of his protective filing. (R. 10.) The ALJ followed the standard five-step "sequential evaluation process":

> The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity ["RFC"]. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

At Step One, the ALJ found that Dyson had not engaged in substantial gainful activity since his application date. (R. 12.) At Step Two, she determined that Dyson had a severe degenerative joint disease of the cervical spine, but found that his hepatitis C and hypertension were well controlled and that he did not suffer from any medically determinable mental impairment. (R. 12-13.) At Step Three, she determined that he did not have an impairment or combination of impairments that met or equaled the criteria set out in the Listings of Impairments found at 20 C.F.R. Pt. 404, Subpart P, App. 1. (R. 13.)

The ALJ then determined that Dyson retained the RFC to perform the full range of medium work. (Id.) Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In reaching this conclusion, the ALJ provided only the following assessment of Dr. Branon's opinion:

> As for the opinion evidence, in [a] medical source statement dated July 3, 2007, Dr. Cheryl Brannon [sic] concluded that the claimant could lift/carry a maximum of 25 pounds occasionally and 10 pounds frequently; stand/walk less than 2 hours in an 8-hour workday; could never crawl or stoop; could occasionally climb, kneel or crouch; and should avoid temperature extremes, vibration and hazards. While Dr. Brannon [sic] mentioned the presence of low back pain *no actual diagnosis or*

> *physical findings are offered* to support the presence of the concluded limitations. Additionally, *nothing with[in] the limited treatment record* supports the presence of such severe limitations as offered by Dr. Brannon [sic]. *Consequently[,] little weight is accorded to this opinion.*

(R. 16 (emphasis added).) The ALJ rested her RFC assessment on what she described as "the relatively benign objective findings, the extremely limited degree and conservative nature of the treatment claimant has received, and his level of activities of daily living." (Id.)

At Step Four, and with the assistance of a vocational expert, the ALJ found that Dyson's past work as a "cleaner/janitor" was "exertionally medium work" and did not "require the performance of work-related activities precluded by [his] residual functional capacity." (Id.) Accordingly, the ALJ concluded that Dyson had not been under a disability since the date he filed his application and could return to his past relevant work as a cleaner/janitor. (Id.)

The Appeals Council denied Dyson's request for review on June 26, 2009, and informed Dyson that this meant that "the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case." (R. 1.) Dyson filed the complaint in this case on August 29, 2009. (Docket No. 3.) On December 1, 2009, Dyson filed a Motion for Summary Judgment/Request for Review or, in the Alternative, Motion for Remand (the "Request for Review"). (Docket No. 8.) In the Request for Review, Dyson claims that: (1) the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not factor into her determination that Dr. Branon was Dyson's treating physician, and that therefore Dr. Branon's opinion should have been given greater weight; and (2) Dr. Branon's opinion limited Dyson to light work and accordingly, under the regulations, because of his age and skill level, Dyson must be found to be disabled. (Pl.'s Br. 3-7.) In its December 31, 2009, response (Docket No. 9), the

Commissioner argued that the ALJ's decision was correct because her RFC assessment was supported by substantial evidence. (Def.'s Br. 4.)

The court referred the Request for Review to the Magistrate Judge on January 5, 2010. (Docket No. 10.) The Magistrate Judge issued his Report and Recommendation on March 31, 2010. (Docket No. 11.) The Magistrate Judge recommended that the court reverse the decision and remand the case for further consideration because it was impossible to determine whether the ALJ had properly considered Dr. Branon's opinion. (Report and Recommendation ("R&R") 8-12.) The Commissioner filed objections to the Report and Recommendation on April 15, 2010. (Docket No. 12.) On April 19, 2010, Dyson filed a reply. (Docket No. 13.)

## II.     Standard of Review

The court must determine whether "substantial evidence" supports the ALJ's decision. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). This standard requires "more than a mere scintilla" of evidence but "somewhat less than a preponderance of the evidence." Rutherford, 399 F.3d at 552 (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). The court may not undertake a *de novo* review of the ALJ's decision or re-weigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Instead, as long as they are supported by substantial evidence, the court must give deference to the ALJ's findings and accept them as conclusive. Rutherford, 399 F.3d at 552.

The issue before the ALJ was whether Dyson was disabled under Section 1614(a)(3)(A) of the Social Security Act, and thus entitled to SSI benefits. (R. 10.) Disability is the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). As described in Section I, *supra*, the ALJ followed the standard five-step sequential evaluation process to determine if Dyson is entitled to SSI benefits:

> In the first four steps the burden is on the claimant to show that [he] (1) is not currently engaged in gainful employment because [he] (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves [him] lacking the RFC to return to [his] previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, [he] is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).

Rutherford, 399 F.3d at 551. The portion of the ALJ's evaluation that is relevant at this stage is the ALJ's RFC assessment. According to the regulations, if an ALJ finds in Step Three that a claimant's impairment or combination of impairments do not meet or medically equal the criteria of one listed in 20 C.F.R. Pt. 404, Subpart P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926), then the ALJ must proceed to Step Four, which requires the ALJ to determine whether the claimant can return to previous work based on an assessment of the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). The RFC assessment is meant to reflect "the most [a claimant] can still do despite [his or her] limitations." Id. § 416.945(a)(1).

In making an RFC assessment, the ALJ is required to review all relevant evidence available, including any "medical source statement." S.S.R. 96-5p ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source

statements that may be in the case record) when assessing an individual's RFC."). A medical source statement is a medical opinion "about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Id. Medical source statements from treating physicians are entitled to "controlling weight" to the extent they include medical opinions that are "well-supported by medically acceptable clinical and laboratory techniques and [are] not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); see also S.S.R. 96-5p ("Medical source statements submitted by treating sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment(s)."). Even if an ALJ finds that a medical opinion should not be afforded controlling weight:

> [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§] . . . 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

S.S.R. 96-2p ("[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."). Factors that must be considered include the treating source's specialization, his or her examining and treatment relationship with the claimant, the supporting explanations provided for the opinion, the consistency of the opinion "with the record as a whole," and any other "relevant factors." 20 C.F.R. § 416.927(d)(1)-(6).

Ultimately, in making an RFC assessment, the ALJ must account for any medically determinable limitation fairly supported by the evidence, even one that is not considered severe.

20 C.F.R. § 416.945(a)(1)-(2). If limitations that are medically supported by the record are contradicted by other evidence, the ALJ may choose which evidence to credit. Rutherford, 399 F. 3d at 554. The ALJ may not, however, reject evidence for "no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). Furthermore, the ALJ must "give some indication of the evidence" which he or she rejected and the "reasons for discounting all of the pertinent evidence" in order to permit "meaningful judicial review." Burnett v. Commissioner of Social Security, 220 F.3d 112, 120-21 (3d Cir. 2000).

## III. Discussion

The Commissioner argues that, in recommending remand of the case for further consideration, the Magistrate Judge ignored the standard of review for Social Security claims by "impermissibly re-weighing the evidence to find that the ALJ improperly evaluated" Dr. Branon's opinion. (Objections 1-2.)[7] Dyson responds that the Magistrate Judge's recommendation is correct because the ALJ's findings were not supported by substantial evidence. (Reply 1.) The court concludes that the decision must be reversed and the case remanded for further consideration because it is impossible to determine from the ALJ's findings: (1) whether the ALJ properly considered Dr. Branon's opinion in light of all of the factors required under the regulations, including that Dr. Branon was Dyson's treating physican; (2) whether the ALJ properly considered Dr. Branon's "medical/clinical findings," including that "crawling and stooping causes severe pain in low back" and that "vibration exacerbates back pain"; and (3) whether the ALJ properly considered whether Dr. Branon's opinion was consistent with the record as a whole, including the MRI and CT scan taken on July 25, 2007.

---

[7] No other medical opinion evidence regarding Dyson's physical limitations is part of the record.

To begin, the Commissioner does not dispute that Dr. Branon was Dyson's "primary care physician" or "treating physician." (Def.'s Br. 5; Objections 4-5.)[8] Instead, the Commissioner argues that it is not important that the ALJ did not state explicitly that Dr. Branon was Dyson's treating physician: "the fact that the ALJ did not specifically identify Dr. Brannon [sic] as Plaintiff's treating physician does not render the ALJ's evaluation of Dr. Brannon's [sic] opinion unsupported by substantial evidence." (Objections 4.) The Commissioner argues that the ALJ evaluated Dr. Branon's opinion in accordance with the governing regulations, including by considering Dr. Branon's treatment notes, the lack of a diagnosis by Dr. Branon or "credible objective findings," Dr. Branon's limited physical examination findings, and Dyson's "sparse" treatment history. (Objections 3-4.) The Commissioner argues that in requesting that the court reverse the ALJ's decision or remand the case for a further hearing, Dyson is asking the court to usurp the ALJ's functions by re-weighing the evidence that the ALJ considered. (Id. at 3.)

The court will not re-weigh the evidence the ALJ considered. It is simply not possible, however, to determine from the ALJ's decision whether her findings are supported by substantial evidence. The ALJ failed to acknowledge one way or the other that Dr. Branon was Dyson's treating physician, making it impossible to determine whether the ALJ considered the required factors when she decided to give Dr. Branon's opinion only little weight. See 20 C.F.R. § 416.927(d)(2) (medical source statements from treating physicians are entitled to "controlling weight" to the extent they include "well-supported" medical opinions that are "not inconsistent with other substantial evidence" in the record); see also S.S.R. 96-2p (even if a medical opinion should not be afforded controlling weight, "[t]reating source medical opinions are still entitled to

---

[8] As noted, the record discloses that Dr. Branon is a specialist in internal medicine. (R. 197.)

deference and must be weighed using all of the factors provided" in 20 C.F.R. § 416.927).[9]

If the ALJ properly considered Dr. Branon's status as a treating physician when the ALJ determined that Dr. Branon's opinion did not meet the test for controlling weight, the ALJ did so only implicitly.  Furthermore, even if the ALJ properly considered Dr. Branon's status as a treating physician, albeit implicitly, the ALJ was still required to consider Dr. Branon's opinion in light of "all of the factors provided" in 20 C.F.R. § 416.927.  S.S.R. 96-2p.  It is not clear whether the ALJ considered, for example, Dr. Branon's specialization, her examining and treatment relationship with Dyson, the supporting explanations provided for the opinion, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 416.927(d)(1)-(6) (directing that ALJ consider above factors as well as any other "relevant factors").  The ALJ also did not acknowledge that, for example, Dr. Branon saw Dyson as many as eleven times between January 20, 2005, and July 3, 2007, or that she prescribed him Percocet on fifteen separate occasions.  (R. 205-15.)  It is impossible to determine whether the ALJ properly considered all of the required factors because the ALJ did not state explicitly whether and how she did so.

The ALJ did state that "[w]hile Dr. Brannon [sic] mentioned the presence of low back pain," Dr. Branon offered no "physical findings" to support her conclusions.  (R. 16.)  Dr. Branon stated, however, that her conclusions were supported by "medical/clinical findings," including that "crawling and stooping causes severe pain in low back" and "vibration exacerbates back pain."  (R. 195, 197.)  The Commissioner argues that Dr. Branon's statements regarding her

---

[9] Dr. Branon's is the only medical opinion in the record regarding Dyson's exertional, postural, and environmental limitations, and it is not contradicted by the opinion of another medical source.  There is, however, "no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."  Titterington v. Barnhart, 174 Fed. App'x 6, 11 (3d Cir. 2006).  Nevertheless, the lack of any contradicting opinion makes the ALJ's failure to articulate the basis for her findings more troubling.

medical/clinical findings were merely references to Dyson's "subjective complaints."

(Objections 5.) The regulations require that "[t]hese physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb.'" 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00D. It may be that when the ALJ stated that Dr. Branon offered "no physical findings" to support her conclusions, the ALJ meant that Dr. Branon offered no "objective observation during the examination" and only "the individual's allegation." It is impossible to tell, however, because the ALJ's findings do not explain if and why she did not consider Dr. Branon's medical/clinical findings to be proper "physical findings" under the regulations. Thus, for this reason as well, the court cannot determine whether the ALJ's findings were supported by substantial evidence.[10] [11]

---

[10] The ALJ was also required to consider the extent to which Dr. Branon's medical source statement was consistent with the "record as a whole." 20 C.F.R. § 416.927(d)(4). Although the ALJ stated that "nothing with[in] the limited *treatment record* supports the presence of such severe limitations as offered by Dr. Brannon [sic]" (R. 16) (emphasis added), the ALJ provided no discussion whatsoever as to whether Dr. Branon's opinion was consistent with the MRI and CT scan performed on Dyson's neck on July 26, 2007, which revealed multiple problems including disc herniation and bulging, multilevel cervical spondylosis, and extensive degenerative changes and disease throughout the cervical spine. By considering Dr. Branon's opinion only in relation to the "limited treatment record" the ALJ appears to have disregarded the MRI and CT scan of Dyson's neck when determining whether Dr. Branon's opinion was consistent with the record as a whole.

It may be that the ALJ determined that the MRI and CT scan of the neck did not provide support for Dr. Branon's opinion because Dr. Branon's medical/clinical findings mention only "low back pain" and "back pain," not neck pain, or because Dr. Branon issued her opinion three weeks before the MRI and CT scan were performed. But it is impossible to determine from the ALJ's decision whether she properly considered whether Dr. Branon's opinion was consistent with the MRI and CT scan. Thus, for this reason as well, it is impossible to determine whether the ALJ's findings are supported by substantial evidence.

Similarly, because of the ALJ's failure to articulate properly the bases for her decision, it is impossible for the court to review the ALJ's determination that Dyson's testimony was not credible. (R. 15) The ALJ rejected Dyson's testimony to the extent it was inconsistent with the RFC assessment, even though it was consistent with the medical source statement of Dr. Branon:

- 13 -

For similar reasons, the court must reject Dyson's argument that the court should reverse the Commissioner's decision and award Dyson SSI benefits. Dyson argues that the court should award him SSI benefits because: (1) Dr. Branon's opinion supports a finding that he is limited to performing light work; and (2) a person of Dyson's age and skill level who is limited to light work is considered disabled under the regulations. (Pl.'s Br. 7; see also 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. . . . If you cannot make an adjustment to other work, we will find that you are disabled.").) A court may only award benefits, however, when the "administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicate that the claimant is disabled and entitled to benefits." Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (quoting Podedworny v. Apfel, 747 F.2d 210, 222 (3d Cir. 1984)). Given that the ALJ has failed to articulate properly the bases for her decision, the court is unable to conclude that the record has been fully developed.[11]

---

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 15.) The ALJ might have been correct to the extent that she found that Dyson's testimony was not entitled to "great weight" because it was not "supported by competent medical evidence." Schaudeck v. Comm. of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999). It is impossible, however, for the court to determine whether the ALJ properly considered Dr. Branon's opinion in finding that Dyson was not credible. Accordingly, it is impossible for the court to determine whether the ALJ's credibility finding is supported by substantial evidence.

[11] Obviously, the court takes no position as to whether Dyson should or should not be declared disabled.

In addition, it would appear that testimony or records from Dr. Wren, who as an orthopedist could shed some light on the extent of Dyson's back problems both in the cervical and lumbar areas, would be necessary to have a "fully developed" record.

## IV. Conclusion

The ALJ must "give some indication of the evidence" which he or she rejected and the "reasons for discounting all of the pertinent evidence" in order to permit "meaningful judicial review." Burnett, 220 F.3d at 120-21. The ALJ has not done so in this case. The court will, accordingly, reverse the Commissioner's decision and remand the case for further consideration. An appropriate order follows.